FILED
4/27/22 8:42 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 21-22319-GLT |
| | Chapter 7 |
| **JESSE C. CAMPAYNO,** | |
| *Debtor.* | |
| **UNITED STATES TRUSTEE,** | |
| *Movant,* | Related to Dkt. Nos. 35, 38 |
| v. | |
| **JESSE C. CAMPAYNO,** | |
| *Respondent.* | |

| | |
|---|---|
| Jodi L. Hause, Esq. | Kathryn L. Harrison, Esq. |
| Office of the United States Trustee | Campbell & Levine, LLC |
| Pittsburgh, PA | Pittsburgh, PA |
| *Attorney for the United States Trustee* | *Attorney for the Debtor* |

### <u>MEMORANDUM OPINION</u>

Jesse C. Campayno pockets over $7,296 each month after payment of his expenses, yet insists he needs chapter 7 relief to discharge a single $50,000 business guaranty. In terms of abuse, this is not a close case. Indeed, the United States Trustee requests dismissal[1] under section 707(b)(3) of the Bankruptcy Code,[2] though the Debtor claims immunity from such scrutiny. He theorizes that the bulk of his debt—mortgage obligations secured by his residence—are not "consumer debts" under the Bankruptcy Code because they were "incurred by" a tenancy by the

---

[1]    See *Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. § 707(b)(3)* ("Motion to Dismiss"), Dkt. No. 35.

[2]    Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

entirety and not "an individual."[3]  Finding his protestations a mere smokescreen to distract from

crystal clear abuse, the Court will grant the *Motion to Dismiss*.

## I.      BACKGROUND

The facts are undisputed and premised entirely on the bankruptcy schedules.  The

Debtor filed a voluntary chapter 7 petition on October 27, 2021 and indicated that his debts were

"primarily business debts."[4]   On *Schedules D* and *E/F*, the Debtor listed six debts totaling

$333,800:[5]

| Creditor | Type | Amount |
|---|---|---|
| Wells Fargo Home Mortgage | First Mortgage on Residence | $75,000 |
| Dollar Bank | Second Mortgage on Residence | $120,000 |
| Toyota Financial Services | Motor Vehicle Loan | $29,000 |
| Internal Revenue Service | Income Tax | $50,000 |
| Pennsylvania Department of Revenue | Income Tax (pass through income from LLC) | $9,800 |
| Key Bank | Business Guaranty | $50,000 |

The guaranty owed to Key Bank is marked as contingent, unliquidated, and

disputed on *Schedule E/F* and is the only unsecured, non-priority debt subject to possible discharge

in chapter 7.[6]   In fact, the sole purpose of this chapter 7 case is to discharge the Key Bank

guaranty.[7]   Key Bank commenced a breach of contract action against the Debtor in the Court of

Common Pleas for Allegheny County prepetition.[8]   He asserts that bankruptcy relief was necessary

---

[3]      See *Response of the Debtor to the Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(3) by the United States Trustee* ("Response"), Dkt. No. 38.

[4]      *Voluntary Petition for Individuals Filing for Bankruptcy* ("Petition"), Dkt. No. 1 at 6.

[5]      See *Schedule D: Creditor Who Have Claims Secured by Property* ("Schedule D"), Dkt. No. 8 at 11-12; *Schedule E/F Creditors Who Have Unsecured Claims* ("Schedule E/F"), Dkt. No. 8 at 13-16.

[6]      Id.

[7]      See *Response*, Dkt. No. 38 at ¶ 35.

[8]      *Statement of Financial Affairs for Individuals Filing For Bankruptcy* ("Statement of Financial Affairs"), Dkt. No. 8 at 27.

because he "could no longer sustain the financial burden of the litigation" and Key Bank "refused to permit . . . any type of monthly payment plan."[9]

On *Schedule A/B*, the Debtor listed a Pittsburgh residence worth $250,000 that he owns with his spouse as tenants by the entirety.[10]  He also disclosed two vehicles: a 2019 Toyota Highlander fully encumbered by a lien and a high-mileage 2005 Toyota Rav4 worth $2,500.[11] Beyond that, the Debtor's scheduled assets appear modest: $5,000 in household goods, a $100 desktop computer, $200 golf clubs, ordinary clothes, a wedding band, and joint checking accounts totaling $5,428.59.[12]  On *Schedule C*, he listed nearly all property from *Schedule A/B*, but in most instances failed to claim an amount as exempt other than $0.[13]

The Debtor's household consists of himself, his wife, and his "adult" son.[14]  His wife is not employed and receives social security payments of $1,566 per month.[15]  The record does not indicate whether his adult son is employed or contributes to the household.  The Debtor is employed as a project director, but he neglected to specify on *Schedule I* how long he has been with his current employer.[16]  On his *Statement of Financial Affairs*, the Debtor listed annual gross

---

[9]     *Response*, Dkt. No. 38 at ¶ 35.  At the hearing on the *Motion to Dismiss*, the Debtor asserted that the facts underlying the business debt were an unfair topic of discussion because Key Bank had not appeared in this case.  *Audio Recording of March 31, 2022 Hearing* at 10:18:17-10:18:55 a.m.

[10]    *Amended Schedule A/B: Property* ("Schedule A/B"), Dkt. No. 29 at 6.  In the *Response*, the Debtor suggests they "purchased their home together as joint tenants."  *Response*, Dkt. No. 38 at ¶ 26.

[11]    *Schedule A/B*, Dkt. No. 29 at 7.

[12]    Id. at 7-11.

[13]    *Amended Schedule C: The Property You Claim as Exempt* ("Schedule C"), Dkt. No. 29 at 12-13.  See Schwab v. Reilly, 560 U.S. 770, 782, 130 S. Ct. 2652, 2662, 177 L. Ed. 2d 234 (2010) (exemptions are taken at face value).

[14]    *Schedule J: Your Expenses* ("Schedule J"), Dkt. No. 8 at 22.  Although *Schedule J* specifically calls for the age of any listed dependents, the Debtor's son is merely stated to be an "adult."  Because the Debtor and his wife are in their mid-60s, their son could plausibly be 18 to 45 years of age.

[15]    *Schedule I: Your Income* ("Schedule I"), Dkt. No. 8 at 20-21.

[16]    Id. at 20.

income of $175,989, $184,741, and $165,000 (through 10+ months of 2021) for the last three years.[17]  On *Schedule I*, the Debtor reported a combined monthly income of $16,928.50 after payroll deductions, inclusive of social security payments of $3,133 and an "averaged" lump-sum bonus in the amount of $2,226.[18]  Although not included in his income itemization, the Debtor revealed that he will also earn an additional $8,000 "this semester" teaching at the University of Pittsburgh, which he does "every other academic year for one semester."[19]

There is a glaring inconsistency between *Schedule A/B* and *Schedule I*.  The Debtor reported on *Schedule A/B* he has no retirement or pension accounts,[20] yet disclosed a monthly payroll deduction of $439.83 for "[m]andatory contributions for retirement plans" on *Schedule I*.[21]  In the *Response*, he reiterated his lack of retirement savings to help dispel the notion that this filing was abusive under the totality of the circumstances.[22]

On *Schedule J*, the Debtor set down monthly expenses totaling $9,631.56.[23]  These expenses are reproduced in the table below:

| Monthly Expense | Schedule J |
|---|---|
| Rental or home ownership expense | $1,970.00 |
| Property, homeowner's, or renter's insurance | $120.00 |
| Home maintenance, repair, and upkeep expenses | $400.00 |
| Additional mortgage payments | $250.00 |
| Electricity, heat, natural gas | $500.00 |
| Water, sewer, garbage collection | $150.00 |
| Telephone, cell phone, internet, satellite, and cable services | $400.00 |
| Food and housekeeping supplies | $1,200.00 |

---

[17]    *Statement of Financial Affairs*, Dkt. No. 8 at 25-26.

[18]    *Schedule I*, Dkt. No. 8 at 20-21.  Although the Debtor's bonus is not paid monthly but in a lump sum, he opted to disclose it in this manner on *Schedule I* and invited the Court to rely on those representations.

[19]    Id. at 21.

[20]    *Schedule A/B*, Dkt. No. 29 at 9.

[21]    *Schedule I*, Dkt. No. 8 at 21.

[22]    *Response*, Dkt. No. 38 at ¶ 35.

[23]    *Schedule J*, Dkt. No. 8 at 22-23.

| | |
|---|---|
| Clothing, laundry, and dry cleaning | $500.00 |
| Personal care products and services | $300.00 |
| Medical and dental expenses | $400.00 |
| Transportation | $550.00 |
| Entertainment, clubs, recreation, newspapers, magazines, and books | $200.00 |
| Charitable contributions and religious donations | $200.00 |
| Life Insurance | $65.00 |
| Health Insurance | $100.00 |
| Vehicle Insurance | $176.00 |
| Disability Insurance (deducted from payroll) | $240.00 |
| IRS Repayment Plan | $750.00 |
| Car Payments for Vehicle 1 | $580.56 |
| Citizens (Student Loan; recently consolidated) | $380.00 |
| Other real property expenses: Maintenance, repair, and upkeep expenses | $200.00 |
| **Total Monthly Expenses** | **$9,631.56** |

Even on a cursory examination, several listed expenses stand out. First, the monthly student loan expense of $380 is curious because the Debtor did not list any student loans on *Schedule E/F*. Second, considering only one real property is listed on *Schedule A/B*, it is unclear why there is a second line item for real property "maintenance, repair, and upkeep expenses."[24] Third, at least $240 of insurance expenses listed on *Schedule J* are expressly duplicative of the insurance payroll deductions reflected on *Schedule I*.[25]

Deducting all monthly expenses ($9,631.56) from the Debtor's combined monthly income ($16,928.50) yields monthly net income of $7,296.94.[26] But remember, his actual monthly net income is likely larger due to teaching income and the duplicative insurance expense.[27]

---

[24]     See *Schedule J*, Dkt. No. 8 at 22-23, lines 4c and 20d.

[25]     See *Schedule I*, Dkt. No. 8 at 21.

[26]     *Schedule J*, Dkt. No. 8 at 23.

[27]     *Schedule I*, Dkt. No. 8 at 21.

Following the meeting of creditors in January 2022, the chapter 7 trustee filed a report signaling there were no assets available for distribution.[28]  Weeks later, the Trustee filed the *Motion to Dismiss*, arguing that the Debtor's financial situation demonstrates that chapter 7 relief would be an abuse under section 707(b)(3).[29]  In response, the Debtor asserted section 707(b)(3) is not applicable because his debts are primarily business, not consumer, in nature.[30]  After a hearing on the *Motion to Dismiss*, the Court took the matter under advisement.  Neither party requested an evidentiary hearing, agreeing instead that the Court could rely on the Debtor's schedules.[31]

## II.      JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(A).

## III.     POSITIONS OF THE PARTIES

### A.      The United States Trustee

The Trustee's position is simple: putting aside the Debtor's expenses,[32] it would be an egregious abuse to allow him to discharge a single $50,000 debt that he could easily pay in less than a year from his monthly net surplus of $7,296.94.[33]  The Trustee argues that the facts do not

---

[28]      See Dkt. No. 24.

[29]      *Motion to Dismiss*, Dkt. No. 35 at ¶¶ 37-39.

[30]      *Response*, Dkt. No. 38 at ¶¶ 15-30.

[31]      *Audio Recording of March 31, 2022 Hearing* at 10:15:07-10:16:03 a.m.

[32]      The Trustee suggests that the Debtor's monthly expenses "may be duplicated, overstated, or unreasonably high," but does not press any specific objections.  *Motion to Dismiss*, Dkt. No. 35 at ¶ 22.

[33]      Id. at ¶¶ 35-36, 38.

support the Debtor's characterization of his debts as primarily business in nature.[34]  Agreeing that

neither the guaranty nor the income tax debt are "consumer debts,"[35] the Trustee nonetheless

asserts that the mortgage loans and vehicle loan indisputably are and account for most of the debt.

The Trustee denies that the calculus is altered by the Debtor's tenancy by the entirety, contending

that the Debtor is conflating property interests with obligations.[36]  In fact, the Trustee argues that

recognizing such a tenancy by the entirety "loophole" would be an absurd result.[37]

      B.    <u>The Debtor</u>

        In contrast, the Debtor's position is somewhat confusing and contradictory.  In

essence, he theorizes that neither the mortgage obligations nor the taxes can be "consumer debts"

as defined by the Code because they were not "incurred by an individual."[38]  The Debtor reasons

that "individual," though undefined, must refer to a singular, natural person based on its usage in

the Code.[39]  But he contends the term "individual" must also be defined under non-bankruptcy law

"in the context of a married couple owning joint property."[40]  The Debtor urges that "[i]n

Pennsylvania it is axiomatic [that] 'although there are two natural persons, tenants by the entirety

are but one person in law.'"[41]  Thus, he argues that "the liability incurred to purchase the home is

borne by that same marital entity [that took title], a separate legal entity from either the Debtor or

his spouse."[42]  The Debtor submits that the tax debt similarly arose from joint tax returns filed by

---

[34]    <u>Id.</u> at ¶¶ 23, 33.

[35]    *Audio Recording of March 31, 2022 Hearing* at 10:16:20-10:16:56 a.m.

[36]    <u>Id.</u> at 10:04:14-10:06:05 a.m.

[37]    <u>Id.</u> at 10:17:33-10:18:14 a.m.

[38]    *Response*, Dkt. No. 38 at ¶ 17 (citing 11 U.S.C. § 101(8)).

[39]    <u>Id.</u> at ¶¶ 18-19.

[40]    <u>Id.</u> at ¶ 20.

[41]    <u>Id.</u> at ¶ 24 (quoting <u>In re Barsotti</u>, 7 B.R. 205, 208 (Bankr. W.D. Pa. 1980)) (original brackets omitted).

[42]    <u>Id.</u> at ¶ 26.

"[he] and his spouse as a unit."[43]   Yet he asserts that this separate legal entity is not an

"individual,"[44] despite his insistence that the term be defined by reference to state law.[45]   In any

event, the Debtor concludes that he did not incur the mortgage obligations *as an individual*,

exempting him from a section 707(b) analysis.

At the hearing, the Debtor took it a step further, emphasizing that the mortgage

obligation is not his debt at all.[46]   When pressed, he justified his conflation of property interests

and obligations by positing that legal separateness of the tenancy by the entirety requires it.[47]   The

Debtor could not, however, point to any case supporting this approach.[48]   Ultimately, the Debtor

does not deny that a mortgage loan otherwise qualifies as a consumer debt.[49]   Nor does he dispute

that the motor vehicle loan is a consumer debt.[50]   He did, however, suggest for the first time that

the income tax debts were business debts.[51]

Beyond the threshold issue, the Debtor contends that the Trustee has otherwise

failed to carry his burden to show abuse under the totality of the circumstances.[52]   He asserts that

the number of debts he seeks to discharge is irrelevant.[53]   Moreover, the Debtor argues that the

Trustee ignores several mitigating facts: that he is over 65 years old, has no assets or retirement

---

[43]     Id. at ¶ 27.

[44]     Id. at ¶ 25.

[45]     Id. at ¶ 20.

[46]     *Audio Recording of March 31, 2022 Hearing* at 10:09:05-10:10:33 a.m.

[47]     Id. at 10:11:26-10:12:10 a.m.

[48]     Id. at 10:14:25-10:15:04 a.m.

[49]     Id. at 10:08:45-10:08:55 a.m.

[50]     Id. at 10:08:28-10:08:37 a.m.

[51]     Id. at 10:16:04-10:16:17 a.m.

[52]     *Response*, Dkt. No. 38 at ¶ 38.

[53]     Id. at ¶ 32.

accounts, is obligated to pay the joint debts and support his spouse, and is unlikely to have the financial ability in the future to pay the guaranty because his is the only household income.[54]

## IV.    DISCUSSION

The Code permits a court to, after notice and a hearing, dismiss a chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if granting chapter 7 relief would be an "abuse."[55]   Technically, "abuse" is not defined, but the statute provides three instructions to guide the determination.  First, under section 707(b)(2),[56] "some chapter 7 cases are deemed presumptively abusive based on an objective mathematical formula for debtors whose monthly income exceeds the state median for their family size."[57]  If the debtor fails the "so-called 'Means Test,'" "a presumption of abuse arises which may only be rebutted by demonstrating special circumstances."[58]  If no presumption arose, or was successfully rebutted, section 707(b)(3) then requires the court to consider "whether the debtor filed the petition in bad faith"[59] or whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."[60]

In *In re Kubatka*, the Court wrote extensively about "abuse" determinations under section 707(b)(3)(B).[61]  There, the Court explained that "[i]n this context, . . . 'abuse' . . . mean[s] an improper use of the bankruptcy system to take unfair advantage of one's creditors."[62]  The "totality of the circumstances . . . of the debtor's financial situation," in turn, requires a court to

---

[54]    Id. at ¶¶ 33-36; see also *Audio Recording of March 31, 2022 Hearing* at 10:19:18-10:20:06 a.m.

[55]    11 U.S.C. § 707(b)(1).

[56]    11 U.S.C. § 707(b)(2).

[57]    In re Kubatka, 605 B.R. 339, 355 (Bankr. W.D. Pa. 2019).

[58]    Id.

[59]    11 U.S.C. § 707(b)(3)(A).

[60]    11 U.S.C. § 707(b)(3)(B).

[61]    In re Kubatka, 605 B.R. at 352-68.

[62]    Id. at 367.

9

"weigh 'every aspect' of the case."[63]  This analysis has traditionally been aided by considering the following non-exhaustive list of factors:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of their ability to repay;
>
> (3) Whether the debtor's family budget is excessive or unreasonable;
>
> (4) Whether the debtor's expenses can be reduced significantly without deprivation of adequate food, clothing, shelter, and other necessities;
>
> (5) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;
>
> (6) Whether the debtor enjoys a stable source of future income;
>
> (7) Whether the debtor has the ability to repay debts out of future earnings;
>
> (8) Whether an attempt to repay debts would be easy, difficult, or wholly unfeasible;
>
> (9) Whether the debtor is eligible for chapter 13;
>
> (10) Whether there are state remedies with the potential to ease the financial predicament and the degree of relief obtainable through private negotiations; and
>
> (11) Whether the petition was filed in good faith.[64]

Generally, the analysis "requires a holistic approach" and should not be treated like a mechanical checklist.[65]

    While the court must consider all relevant facets of the debtor's financial situation, they are not entitled to equal weight.  In *Kubatka*, the Court held that the debtor's ability to repay

---

[63]    Id.

[64]    Id. at 367-368 (citing Green v. Staples (In re Green), 934 F.2d 568, 572 (4th Cir. 1991) and In re Krohn, 886 F.2d 123, 126–27 (6th Cir. 1989)).

[65]    Id. at 368.

creditors whose debts would otherwise be discharged without payment under chapter 7 is a "primary" factor driving the Court's assessment of abuse under section 707(b)(3)(B).[66] An ability to pay "means something more than having monthly disposable income" and "instead suggests the ability to generate a return to creditors that is 'meaningful' or 'significant.'"[67]   Typically, this analysis should be considered within the context of a hypothetical chapter 13 case because it is a "stable and predictable environment . . . to make payments over time."[68]   That all said, the ability to pay, though a hefty factor, is not dispositive unless it actually renders the chapter 7 filing an abuse.[69]

As the movant, the Trustee has the initial burden of establishing by a preponderance of the evidence that granting chapter 7 relief would be an abuse.[70]   "As a practical matter, the Trustee must, at a minimum, show that the debtor has income that could be used to fund a hypothetical chapter 13 plan."[71]   If done, the burden shifts to the debtor to refute the specter of abuse and justify chapter 7 relief under the totality of the circumstances.[72]

A.     "Primarily Consumer Debts"

The threshold question posed by the Debtor is whether his debts are *primarily consumer debts.*"[73]   If not, then he is not subject to dismissal for abuse under section 707(b).[74]

---

[66]   Id.

[67]   Id. at 357.

[68]   Id. at 357-58.

[69]   Id. at 368.

[70]   Id. at 358 (citing DeAngelis v. Hoffman (In re Hoffman), 413 B.R. 191, 194 (Bankr. M.D. Pa. 2008) and In re Lenton, 358 B.R. 651, 664-65 (Bankr. E.D. Pa. 2006).

[71]   Id.

[72]   Id.

[73]   11 U.S.C. § 707(b)(1) (emphasis added).

[74]   Id.

The inquiry begins with the statute. The Code defines a "consumer debt" as one "incurred by an individual primarily for a personal, family, or household purpose."[75] "Primarily" in this context simply means more than 50%.[76]

From the outset, the Court finds that the prevailing view is that income tax debt is not "consumer debt" because it is involuntarily imposed, rather than "incurred."[77] Thus, the undisputed portion of the $333,800 of debt is as follows:

| | | |
|---|---|---:|
| **Consumer Debts:** | Toyota Financial Services | $29,000 |
| | **Total:** | **$29,000** |
| | | |
| **Non-consumer Debts:** | Internal Revenue Service | $50,000 |
| | Pennsylvania Department of Revenue | $9,800 |
| | Key Bank | $50,000 |
| | **Total:** | **$109,800** |

As a result, the classification of the Debtor's two mortgage obligations, which total $195,000, will determine whether he has primarily consumer debts.

The Debtor argues that a mortgage obligation secured by real property that is held by tenants by the entirety is not a debt "incurred by an individual," and therefore not a "consumer debt." The Court finds no flaw with his starting point: in the Code, "individual" means a single human being.[78] After all, words in a statute are given their "ordinary, contemporary, common

---

[75]    11 U.S.C. § 101(8).

[76]    See Price v. U.S. Tr. (In re Price), 353 F.3d 1135, 1139 (9th Cir. 2004); Stewart v. U.S. Tr. (In re Stewart), 175 F.3d 796, 808 (10th Cir. 1999); Matter of Booth, 858 F.2d 1051, 1055 (5th Cir. 1988).

[77]    See I.R.S. v. Westberry (In re Westberry), 215 F.3d 589 (6th Cir. 2000); In re Sijan, 611 B.R. 850, 856 (Bankr. S.D. Ohio 2020); In re Garcia, 606 B.R. 98, 106 (Bankr. D.N.M. 2019); In re Grillot, 578 B.R. 651, 656 (Bankr. D. Kan. 2017); In re Decker, 535 B.R. 828, 831 (Bankr. D. Alaska), aff'd sub nom. Decker v. Off. of the United States Tr., 548 B.R. 813 (D. Alaska 2015); AFF Ohio, LLC v. Jelinger (In re Jelinger), No. 12-30949, 2014 WL 996266 at *4 (Bankr. N.D. Ohio Mar. 13, 2014); In re Rucker, 454 B.R. 554, 555 (Bankr. M.D. Ga. 2011); DeAngelis v. Liegey (In re Liegey), No. 1:09-BK-00661MDF, 2009 WL 3817902, at *3 n.3 (Bankr. M.D. Pa. Nov. 13, 2009); In re Wisher, 222 B.R. 634, 636 (Bankr. D. Colo. 1998); In re Brashers, 216 B.R. 59, 60–61 (Bankr. N.D. Okla. 1998).

[78]    INDIVIDUAL, *Merriam-Webster Dictionary* (2022), https://www.merriam-webster.com/dictionary/individual

meaning" absent evidence Congress intended otherwise.[79]  It is also apparent that a singular

definition is appropriate given the phrase "individual *and spouse*" appears in the definitions of

"family fisherman" and "family farmer."[80]  Unfortunately, this is where the Court and the Debtor

part company.

Having correctly defined "individual," the Debtor then insists "the term must be

'defined under non-bankruptcy law'" as well, quoting *In re Barsotti* for support.[81]  But *Barsotti*

says no such thing.  Instead, the full passage states: "since federal law does not define *entireties*

*property, a debtor's interest in entireties property* is defined under non-bankruptcy law."[82]  This,

of course, follows the fundamental concept that "[p]roperty interests are created and defined by

state law."[83]  Ironically, the Debtor's selective quoting of *Barsotti* has nothing to do with

redefining "individual" as is made plain when he later concludes a tenancy by the entirety cannot

be one.[84]  The point, it seems, was merely to transition the discussion to tenancies by the entirety.

A tenancy (or estate) by the entirety is a form of co-ownership of real or personal

property by a husband and wife with a right of survivorship.[85]  As explained by the Supreme Court

of Pennsylvania, "[i]ts essential characteristic is that each spouse is seized . . . of the whole or the

entirety and not of a share, moiety, or divisible part."[86]  The concept of a single interest in the

---

[79]    See Williams v. Taylor, 529 U.S. 420, 431, 120 S. Ct. 1479, 1488, 146 L. Ed. 2d 435 (2000); Pioneer Inv.
Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993);
Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001).

[80]    See 11 U.S.C. §§ 101(18)(A), (19A)(A) (emphasis added).

[81]    *Response*, Dkt. No. at ¶ 20 (quoting In re Barsotti, 7 B.R. at 208).

[82]    In re Barsotti, 7 B.R. at 208.

[83]    Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).

[84]    *Response*, Dkt. No. 38 at ¶ 25.

[85]    See In re Gallagher's Est., 352 Pa. 476, 478, 43 A.2d 132, 133 (1945); see also In re Brannon, 476 F.3d 170,
173 (3d Cir. 2007); In re Barsotti, 7 B.R. at 208.

[86]    In re Gallagher's Est., 352 Pa. at 478; see Gasner v. Pierce, 286 Pa. 529, 531, 134 A. 494, 495 (1926); Stuckey
v. Keefe's Ex'r, 26 Pa. 397, 399 (1856).

entire estate hinges on the legal fiction that husband and wife are looked upon as a single entity: "There is but one estate, and, in contemplation of law, it is held by but one person."[87]  As a result, the death of one spouse "merely reduces the *legal* personage holding the estate to an individuality identical with the *natural* person" with no alteration to the estate itself.[88]  Neither spouse may unilaterally sever the entirety estate,[89] and the entirety property cannot be reached for execution by the creditors of one spouse while the other is alive.[90]

The Debtor seizes the single entity pretense to assert that the mortgage obligations were incurred by the "marital entity" that took title to the residence.[91]  In essence, the Debtor seeks to turn fiction into reality by recognizing a separate legal entity for all purposes.  But a tenancy by the entirety is a form of *co-ownership*.  Nothing more, nothing less.  Spouses "are but one person in law"[92] for one purpose alone—to hold a single, indivisible estate.[93]  The legal fiction only exists to explain how two natural persons each can own the entire property interest.  Frankly, it is a stretch

---

[87]   <u>Gasner v. Pierce</u>, 286 Pa. at 531; <u>see</u> <u>Stuckey v. Keefe's Ex'r</u>, 26 Pa. at 399 ("although there are two *natural* persons, they are but one person in *law*, and upon the death of either, the survivor takes no new estate.") (emphasis in original); <u>see also</u> <u>In re Brannon</u>, 476 F.3d at 173 ("As the author of a respected treatise explains, '[H]usband and wife are looked upon, together, as a single entity, like a corporation. The single entity is the owner of the whole estate. . . .' Ladner on Conveyancing in Pennsylvania, § 1.08 at 16 (John Makdisi, ed., rev. 4th ed.1979).").

[88]   <u>Stuckey v. Keefe's Ex'r</u>, 26 Pa. at 399 (emphasis in original).

[89]   <u>See</u> <u>Shoup v. Shoup</u>, 469 Pa. 165, 170, 364 A.2d 1319, 1322 (1976); <u>Sterrett v. Sterrett</u>, 401 Pa. 583, 586, 166 A.2d 1, 3 (1960); <u>In re Gallagher's Est.</u>, 352 Pa. at 478; <u>Gasner v. Pierce</u>, 286 Pa. at 532.

[90]   <u>See</u> <u>Madden v. Gosztonyi Sav. & Tr. Co.</u>, 331 Pa. 476, 482-83, 200 A. 624, 627-28 (1938); <u>Gasner v. Pierce</u>, 286 Pa. at 532; <u>Beihl v. Martin</u>, 236 Pa. 519, 84 A. 953, 954 (1912); <u>McCurdy v. Canning</u>, 64 Pa. 39, 41 (1870).

[91]   *Response*, Dkt. No. 38 at ¶ 26.

[92]   <u>Stuckey v. Keefe's Ex'r</u>, 26 Pa. at 399 (emphasis omitted).

[93]   <u>See</u> <u>Gasner v. Pierce</u>, 286 Pa. at 531 ("There is but one estate, and, in contemplation of law, it is held by but one person.").

even to suggest that this single entity is truly separate from the individual spouses because it merely describes the nature of what each hold.[94]

Ultimately, there was no separate marital entity that incurred the mortgage obligations.  Rather, the Debtor and his spouse—both indisputably "individuals"—incurred them when they executed the promissory notes secured by the mortgages.[95]  Because the Debtor does not dispute that the mortgage obligations were otherwise incurred "primarily for a personal, family, or household purpose,"[96] they are consumer debts.[97]  As a result, his debts are primarily consumer debts and section 707(b) applies here.

 B. <u>Abuse under the Totality of the Circumstances</u>

Turning to the "totality of the circumstances . . . of the debtor's financial situation," the Court reiterates its introductory observation—*in terms of abuse, this is not a close case*. Remember that a debtor's ability to repay creditors who debts would otherwise be discharged without payment is the driving consideration under section 707(b)(3)(B).[98]  In that light, comparing the Debtor's monthly disposable income of $7,296.94 to the $50,000 guaranty he seeks to discharge paints a bad picture.  To be blunt, it only gets worse upon closer inspection of his schedules.  Nevertheless, the Debtor rested on those schedules and declined an opportunity to present further evidence.

---

[94] Although an important piece of the Debtor's argument, the word "separate" is not used to describe the "single entity" in the cases he cited or by those reviewed by the Court.

[95] Notably, the schedules reflect this reality as opposed to omitting the entireties interest from *Schedule A/B*, the mortgage obligations from *Schedule D*, and his wife from *Schedule H: Your Codebtors*.

[96] 11 U.S.C. § 101(8).

[97] *Audio Recording of March 31, 2022 Hearing* at 10:08:45-10:08:55 a.m.

[98] <u>In re Kubatka</u>, 605 B.R. at 358.

The Court begins by examining the Debtor's expenses on *Schedule J*.  Indeed, under section 707(b)(3)(B), a court must review the debtor's budget to ensure any expenses not "reasonably necessary" for the debtor's (or his dependent's) maintenance and support are counted as funds available for repayment.[99]  As noted by the Trustee, the Debtor's scheduled expenses seem overstated and do not reflect the normal belt-tightening observed in chapter 7 cases.  That said, given the numbers involved, time is better spent grasping the low-hanging fruit than trimming the fat.  From this perspective, there are two expenses that are undeniably problematic.

First, the Debtor lists a $240 monthly expense for disability insurance with the description "[d]educted from payroll" on *Schedule J*.[100]  The instructions, however, expressly state that insurance expenses deducted from pay should not be included on line 15.[101]  Because *Schedule I* already includes $624 in payroll deductions for insurance, the Court finds the disability insurance expense on *Schedule J* to be duplicative.  Accordingly, $240 must be added to his net disposable income to account for this error.

Second, *Schedule J* reveals the Debtor pays a monthly installment of $380 to "Citizens" for a "Student Loan."[102]  Critically, he did not disclose either a student loan debt or a debt owed to Citizens on *Schedule E/F*.  The Court therefore presumes that the student loan obligation belongs to the Debtor's adult son.  In *Kubatka*, the Court held that support for adult children or contributions to their education are generally unreasonable under section 707(b)(3)(B).[103]  "The rationale is simple and obvious: 'educational expenses for adult children

---

[99]   Id. at 353-54.

[100]   *Schedule J*, Dkt. No. 8 at 23, line 15d.

[101]   Id. at 23, line 15 ("Do not include insurance deducted from your pay or included in lines 4 or 20.").

[102]   Id. at 23, line 17c.

[103]   In re Kubatka, 605 B.R. at 367 (collecting cases).

are discretionary and are not expenses that should be foisted upon a debtor's pre-petition creditors.'"[104]  As there are no facts in the record to justify a deviation from the general rule, the Debtor cannot reasonably prefer his son's creditors to his own.[105]  Thus, his monthly net income requires another upwards adjustment of $380.

On the income side of the equation, *Schedule I* reflects combined monthly income consisting of four components:[106]

| | |
|---|---|
| Debtor's take-home pay from employment: | $10,003.50 |
| Debtor's social security: | $3,133.00 |
| Debtor's spouse's social security: | $1,566.00 |
| Debtor's averaged lump sum bonus: | $2,226.00 |
| Total: | $16,928.50 |

But *Schedule I* shows a fifth source of income omitted from the calculation: $8,000 for teaching one semester at the University of Pittsburgh.[107]  If the Court were to average this amount and a provide a healthy buffer for taxes, that adds at least $450 per month.

Taking these income and expense adjustments into account, the Debtor's monthly net income jumps:

| | |
|---|---|
| Scheduled Current Monthly Income: | $16,928.50 |
| Annualized Teaching Income: | $450.00 |
| **Revised Current Monthly Income:** | **$17,378.50** |
| | |
| Total Monthly Expenses: | $9,631.56 |
| Disability Insurance Adjustment: | -$240.00 |
| Student Loan Payment Adjustment: | -$380.00 |
| **Revised Total Monthly Expenses:** | **$9,011.56** |

---

[104]   *Id.* (quoting In re Staub, 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000).

[105]   See In re Wisher, 222 B.R. at 638 ("Bankruptcy is intended to provide relief to honest debtors who cannot pay their debts. It is not intended to give debtors who have an ability to pay their prepetition obligations protection from their creditors in order to give income to individuals they prefer.").  Even if the loan obligation does not belong to the Debtor's adult son, he provided no basis to include this as a reasonably necessary expense.  See In re Kubatka, 605 B.R. at 365-66.

[106]   *Schedule I*, Dkt. No. 8 at 21.

[107]   *Id.*

**Revised Monthly Net Income:**                    **$8,366.94**
(Revised CMI – Revised Total Expenses)

Even acknowledging that the Debtor would not technically have that amount available every month given the irregular payments from two income sources, he will still generate over *$100,000* per year in disposable income after expenses.  Not too shabby.

Although the Debtor failed to divulge how long he has been with his current employer, his *Statement of Financial Affairs* shows that his annual gross income ranged between $165,000 and $184,741 over the last three years.[108]  In other words, his income appears regular and stable.  It is also worth noting that his wages are more than double the median income for a family of three in Pennsylvania.[109]  Admittedly, the Debtor is 65 years old, but the record does not suggest he has any present intent (or capacity) to retire in the near future.

The Debtor offers little about his financial situation in response, and it is all undercut by his schedules.  For example, he complains that his other debt obligations leave him unable to pay the guaranty, conveniently forgetting that they are already accounted for on *Schedule J*.  Similarly, the Debtor points to his lack of a retirement account, yet *Schedule I* reflects he is contributing to one that is not disclosed on *Schedule A/B*.  Finally, the Debtor's contention that repayment of the guaranty will leave him unable to accumulate assets ignores the magnitude of his disposable income.

Not to belabor the point, but the Debtor can obviously repay the $50,000 guaranty.  In fact, he could pay the guaranty in full in roughly six months.  Chapter 13 relief, though available,

---

[108]    *Statement of Financial Affairs*, Dkt. No. 8 at 25-26.

[109]    See  *New   Median   Income   Standards   (Pennsylvania)   Effective   April   1,   2021*, https://www.pawb.uscourts.gov/sites/default/files/pdfs/ntc210322b.pdf#:~:text=NEW%20MEDIAN%20INCOME%20STANDARDS%20%28PENNSYLVANIA%29%20APRIL%201%2C%202021,1%2C%202021%20and%20later%20%2457%2C919%20%2471%2C448%20%2488%2C293%20%24105%2C138?msclkid=333c268ebd9311ec9ecc4a8a8fb8bad6

is likely unnecessary because there is no financial crisis.  Despite the Debtor's protestations that Key Bank refused a repayment plan, it seemingly lacks any alternative.  Without assets subject to execution, periodic payments (inside or outside of bankruptcy) would be the only means for Key Bank to recover on a potential judgment.  In all, the Court surmises the real issue is that the Debtor disputes the guaranty and neither wants to pay it nor spend money to fight it.  Thus, his chapter 7 case is not about providing a fresh start to an "honest but unfortunate debtor."[110]  Instead, it appears to be a strategic decision to change the legal forum to stymy a creditor.

Ultimately, the Court finds that the totality of the circumstances of the Debtor's financial situation clearly establishes that granting him chapter 7 relief would be a manifest abuse.[111]  As this abuse should have been evident from the outset, the Court fears that the creative debt characterizations were manufactured to avoid the Means Test and the corresponding presumption of abuse.[112]  In the end, however, the facts are so patently egregious they likely would have provided ample cause to dismiss for bad faith under section 707(a) even if the Debtor had primarily business debts.[113]  At any rate, dismissal is warranted under section 707(b)(3).

In closing, the Court notes that the *Response* was deeply lacking in legal and factual support.  So much so that it arguably crossed into the territory of Bankruptcy Rule 9011.  Although

---

[110]  See Brown v. Felsen, 442 U.S. 127, 128, 99 S. Ct. 2205, 2208, 60 L. Ed. 2d 767 (1979); Loc. Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934).

[111]  For added perspective, consider that this Court previously found that chapter 7 relief would be an abuse for a pair of debtors that, after diverting their student loan payments, could pay their general unsecured creditors a 27% dividend ($31,978.80) over five years.  See In re Kubatka, 605 B.R. at 370-72, reconsideration denied sub nom., U.S. Tr. v. Harms (In re Harms), 612 B.R. 288, 291 (Bankr. W.D. Pa. 2020).

[112]  The repayment threshold for presumptive abuse under section 707(b)(2) is 25% of the debtor's nonpriority general unsecured claims or $8,175 over sixty-months.  See 11 U.S.C. § 707(b)(2)(A)(i)(I).

[113]  See 11 U.S.C. § 707(a); Perlin v. Hitachi Cap. Am. Corp., 497 F.3d 364, 372 (3d Cir. 2007) ("a bankruptcy court may properly and unqualifiedly consider a debtor's income and expenses as an analytical step in assessing allegations of debtor misconduct"); Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 207 (3d Cir. 2000) ("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing.").

19

online legal research makes it easier than ever to find favorable words and phrases in cases, context still matters.  By citing or quoting authority in a pleading, counsel represents that they have read the entire case and certifies that to the best of their knowledge it supports the contention for which it is cited.[114]  While good faith mistakes happen, all counsel would be well-advised to remember that.  Since the Court has never observed impetuous behavior from the Debtor's counsel before, this warning will suffice to discourage a repeat occurrence.

## V.    CONCLUSION

In light of the foregoing, the Court will grant the *Motion to Dismiss*.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: April 27, 2022

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor

---

[114]    See Fed. R. Bankr. P. 9011(b)(2).